ORIGINAL

Karl Avetoom, In Pro Per
1100 Rutland Road # 9
Newport Beach, CA 92660
(949) 929-4787
kavetoom@lauricelaw.com



FILED

JUL - 8 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                    Deputy Clerk

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

In re:

Moisey Fridman and Rosa Fridman,

Debtors

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Main Case No: 8:12-bk-11721-ES

Chapter 7

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDITOR KARL AVETOOM'S MOTION FOR AN ORDER CLARIFIYING THIS COURT'S JANUARY 17, 2013 ORDER [Docket 121] GRANTING LIMITED RELIEF FROM STAY AND FOR AN ORDER DETERMINING IF CONTINUATION OF CLAIMS FORMERLY DENIED BY THE RELIEF ORDER VIOLATE THE ORDER ITSELF AND/OR THE '362' STAY; EXHIBIT A & B, SUPPORTING DECLARATION OF KARL AVEOOM.**

Date:     July 29, 2014
Time:    10:30 A.M.
Place:   Courtroom "5A"
            411 West Fourth Street
            Santa Ana, CA

# <u>TABLE OF CONTENTS</u>

I.    RELEVANT BACKGROUND.............................................................. 2

II.   CREDITORS MAY PETITION THE COURT TO CLARIFY THE SCOPE OF
THE RELIEF FROM STAY ORDER.............................................................. 4

III.   THE NINTH CIRCUIT HOLDS THAT RELIEF FROM STAY ORDERS ARE
TO BE NARROWLY CONSTRUED. ........................................................... 5

IV.   CONTINUANCE OF THE CLAIM NOT GRANTED RELIEF BY THIS COURT
SEEKS TO EXPAND ON THE RELIEF OBTAINED IN VIOLATION OF THE
ORDER.......................................................................................... 8

V.    CONCLUSION. ................................................................... 10

# TABLE OF AUTHORITIES

## Cases

Alonso v. Summerville (In re Summerville), 361 B.R. 133 (9th Cir. BAP 2007) ........... 4

Casperone v. Landmark Oil & Gas Corp., 819 F.2d 112 (5th Cir.1987) ...................... 5

Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074 (9th Cir.2000) (en banc)
............................................................................................................................... 5, 9

Harrison v. Adams (1942) 20 Cal.2d 646 .................................................................. 9

Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n (9th Cir. 1993) 997 F.2d 581 ........... 9

In re Bialac (9th Cir. 1983) 712 F.2d 426 .................................................................. 9

In re Chau (D. Nev., Feb. 11, 2014, BR S-12-19953-MKN) 2014 WL 547901 .............. 8

In re Rader (B.A.P. 9th Cir. 2013) 488 B.R. 406 ........................................................ 6

In re Wardrobe (9th Cir. 2009) 559 F.3d 932 ................................................. 4, 5, 6, 10

In re White, 186 B.R. 700 (B.A.P. 9th Cir.1995) ........................................................ 8

InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown, 328 F.Supp.2d 522
(M.D.Pa.2004) .................................................................................................... 6

National R. Co. v. Metropolitan T. Co. (1941) 17 Cal.2d 827 ...................................... 9

Noli v. Comm'r of Internal Revenue, 860 F.2d 1521 (9th Cir.1988) .......................... 5, 6

Trope v. Katz (1995) 11 Cal.4th 274 ......................................................................... 7

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235 (1989) ................................. 8

## Statutes

11 U.S.C. § 362 ............................................................................................. passim

11 U.S.C. § 554 .......................................................................................... 1, 2, 3, 6

11 U.S.C. § 541 ................................................................................................ 11

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, TRUSTEE KARL ANDERSEN AND TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

Creditor Karl Avetoom ("Movant") hereby seeks an Order clarifying the scope of relief of this Court's January 17, 2013 Order granting creditor Darling & Risbrough ("Risbrough") relief from the stay to continue pursuit of the Debtors "assigned" judgment, a former asset of the Debtors, in state Court.  Movant also seeks an order clarifying if pursuit of material in the state court, yet denied relief from relief from stay under this Court's Order violates the Court's Order and/or the '362' stay.

Clarification of this Court's Order permitting continued pursuit based on claims outside an "assignment" is necessary.  Risbrough's Relief Motion [Docket # 83], advanced essentially two alternative bases for the stay (1) that it "owns" the Debtors' former judgment against their HOA by way of "assignment" thus "not invoking" the stay, *or in the alternative* (2) that the Debtors' estate should "abandon" the Debtors' judgment under Section 554 because of a purported "lien priority."  The Court granted relief under the "assignment" claim, but denied the "lien priority" issues  [Docket # 121].  Nonetheless, Risbrough immediately returned to State court and continued to argue his claim for "lien priority" for which this Court denied relief from Stay.

- •    The Ninth Circuit holds that relief from stay orders are "narrowly construed" and a creditor may not impermissibly expand the bankruptcy court's relief in the state court.
- •    Risbrough's return to arguing "lien priority" appears to not only expand the scope of the relief from stay order (which was limited to "assignment"), but possibly violates the stay itself which DENIED relief under this "lien priority" abandonment claim.

1

- The State Court has ordered briefing on both the assignment of the judgment, and Risbrough's "lien priority" claim. Clarification and an Order determining whether the creditors continued adjudication of a claim of "lien priority" which was DENIED, is necessary to make sure the Movant and other creditors, do not violate the terms of this Court's Relief Order, or the '362' stay itself.

The Ninth Circuit holds the relief from scope orders are narrowly/strictly construed, the State Court action is now venturing into an are which this Court specifically denied relief in it's January 17, 2013 Order. Clarification would enable the Creditors, and the State Court, to understand what may be pursued, and what may not be pursued, so as to avoid running afoul or violating this Court's Orders.

## I. **RELEVANT BACKGROUND.**

On November 21, 2012 Creditor Darling & Risbrough ["Risbrough"], the Debtors' former attorneys, filed an omnibus motion seeking relief from the Section 362 automatic stay [Docket # 83]. Risbrough's Motion for Relief was premised essentially upon two arguments: (1) that Risbrough "owns" the Debtors' judgment by way of a purported "assignment" thus "not invoking the '362 stay' as the judgment is no longer the property of the Debtors, *or in the alternative*, to compel abandonment of the Debtors' interest in the judgment under Section 554, as Risbrough has a "priority lien" **over the Debtors asset** [Risbrough Motion for Relief, Docket # 83 Pages 14-19].

On January 3, 2013 this Court issued its ruling, granting in part and denying in part, Risbrough's Motion for Relief. The Court ruled that (1) Risbrough appeared to have a valid "assignment" from the Debtors, thus relief from the Stay was GRANTED, however, (2) the Court DENIED Risbrough's alternate claim for abandonment based on a "priority lien" over the Debtors' judgment argument.

2

The Court issued its final Order, Docket # 121 on January 17, 2013. A true and correct copy is attached hereto as **Exhibit A**. The Order states in relevant part:

> 1.    The Motion is granted as set forth herein. The State Court Litigation is not stayed by 11 U.S.C. § 362 as to the Judgment itself as it is not property of the Debtors' bankruptcy estate as the assignment of the Judgment to Darling & Risbrough was executed prior to the bankruptcy filing and appears valid. Relief from the automatic stay is granted to allow the State Court Litigation to proceed as it relates to the condominium unit currently owned by the Debtors.
>
> 2.    The request to compel abandonment of the Judgment pursuant to 11 U.S.C. § 554 is denied.
>
> 3.    The disposition of the Motion is without prejudice to the Karl T. Anderson, the chapter 7 trustee for the bankruptcy estate of Moisey and Rosa Fridman, from pursuing any avoidance actions he deems appropriate.

Immediately after the Relief from Stay Order was signed Risbrough returned to state court and immediately pursued *both* the "assignment" and denied "lien priority" abandonment claims despite this Court's limited order for relief from stay.

On or around April 16, 2013 the state trial court issued its order addressing Risbrough's claim to the "assignment" and repeated "lien" claims. A true and correct copy is attached hereto as **Exhibit B**.

Creditors Beach Crest Villas and Movant has repeatedly reminded the Court and Risbrough that relief from the 'stay' was limited to the purported "assignment" claim that purportedly makes the writ's underlying judgment the property of Risbrough. However, Risbrough repeatedly ignores this Court's Order and pursues his "lien" claim for which relief was underlined denied. Briefing has been ordered on the "lien priority" claim (which this Court denied), clarification is required to limit the creditors litigation in State Court as to the limited scope consistent with the Ninth Circuit rulings that relief

1  from stay orders are narrowly construed, and to make sure briefing and continuation of a

2  "lien priority" argument does not violate this Court's relief from stay order, or the '362'

3  stay itself.

4        If this Court has ruled that the Writ and underlying judgment is in fact, not part of

5  the estate, then <u>all</u> Creditors should be allowed to bring a fraudulent transfer action in

6  State Court.  At this point, only the Trustee may, prejudicing the other Creditors by

7  making them wait until after the Debtors entire case, including the four adversary

8  complaints, are all resolved.  If the Debtors' former judgment is not part of the estate,

9  then all creditors should be able to file actions against the purported "assignment."

10  Indeed, Judge Colaw clearly held he has substantial reservations over the purported

11  "lien" theory by Risbrough, set forth in Hon. Colaw's 4/16/2013 Minute Order [**Exh B**].

12        On or around May 30, 2014 Risbrough filed another Status Report again raising

13  the "lien priority" issue over the Debtors' judgment.  A true and correct copy is attached

14  hereto as **Exhibit C**.  Simply put, relief was only granted to the "assignment" yet

15  Risbrough has decided to expand this Court's Relief Order into the "lien area" which

16  was specifically denied.

17        Clarification of these issue in state court which flow from this Court's January 17,

18  2013 Relief from Stay Order would be appreciated and save the trial court and involved

19  parties much time.  Creditors should not have to decide to follow a stray creditor and

20  litigate matters in state court, which the bankruptcy court denied relief from stay.

21        Clarification would assist the remaining Creditors to instruct if they may argue

22  material outside the Court's Relief from Stay Order, to preserve their rights in state

23  court, or in doing so, would they be in violation of the Court's Order and potentially the

24  '362' Stay. And if the Creditors may bring their own avoidance action *if* the debtors

25  former judgment is in fact, not part of the estate and not subject to the Trustee's control.

26  **II.  <u>CREDITORS MAY PETITION THE COURT TO CLARIFY THE SCOPE</u>**

27       **<u>OF THE RELIEF FROM STAY ORDER.</u>**

28        A creditor can petition the bankruptcy court and may seek an order from the

4

bankruptcy court <u>clarifying</u> the relief from stay order, *see* <u>Alonso v. Summerville</u> (<u>In re</u> <u>Summerville</u>)*, 361 B.R. 133, 144 (9th Cir. BAP 2007) (stating "[t]he bankruptcy court had jurisdiction to clarify its [relief from stay] order")  See also <u>In re Wardrobe</u> (9th Cir. 2009) 559 F.3d 932, 937.

Movant is the largest unsecured creditor in this bankruptcy, and thus has standing to seek clarification of the Court's January 17, 2013 Order granting limited relief from stay as to what may or may not be pursued in the lower court.

## III.  **THE NINTH CIRCUIT HOLDS THAT RELIEF FROM STAY ORDERS ARE TO BE NARROWLY CONSTRUED.**

The Ninth Circuit Court of Appeals in <u>In re Wardrobe</u> (9th Cir. 2009) 559 F.3d 932, 934 held:

> 11 U.S.C. § 362(a) imposes an automatic stay on proceedings against the debtor. We have explained that "[t]he automatic stay is self-executing" and "sweeps broadly, enjoining the commencement or continuation of any judicial, administrative, or other proceedings against the debtor...." *Gruntz v. County of Los Angeles (In re Gruntz),* 202 F.3d 1074, 1081-82 (9th Cir.2000) (en banc).

The Ninth Circuit went onto hold that:

> A party may petition the bankruptcy court for relief from the automatic stay. 11 U.S.C. § 362(d). However, " 'because only an order of the bankruptcy court can authorize any further progress in the stayed proceedings, it follows that the continuation of the [stayed] proceeding can derive legitimacy **only** from the bankruptcy court order.' " *Gruntz,* 202 F.3d at 1082 (quoting *Noli v. Comm'r of Internal Revenue,* 860 F.2d 1521, 1525 (9th Cir.1988)). **Further, "the terms of an order lifting the automatic stay are strictly construed." *Noli,* 860 F.2d at 1525** (citing <u>Casperone v. Landmark Oil & Gas Corp.</u>, 819 F.2d 112, 114 (5th Cir.1987)).  *See* <u>In re Wardrobe</u> at 934- 35 (emphasis added)

The BAP position is consistent with Ninth Circuit case law that <u>orders granting relief from the automatic stay are to be strictly construed</u>. *See Noli,* 860 F.2d at 1525.

The BAP also discourages creditors from misrepresenting the actual or potential scope of the cause of action pending before a state court and thereby tends to ensure that the bankruptcy court is fully informed as to the potential effect of any order granting relief from the automatic stay. In this way, it furthers the purpose of the automatic stay. <u>In re Wardrobe</u> at 935. See also <u>In re Rader</u> (B.A.P. 9th Cir. 2013) 488 B.R. 406, 413 "the terms of an order lifting the automatic stay are strictly construed." <u>Griffin v. Wardrobe</u> (<u>In re Wardrobe</u>), 559 F.3d 932, 935 (9th Cir.2009) (internal quotation marks omitted); <u>InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown</u>, 328 F.Supp.2d 522, 528–29 (M.D.Pa.2004) ("It is axiomatic that, due to the presumptively expansive scope of the automatic stay, relief from the stay must be narrowly construed.").

This Court's January 17, 2013 Order GRANTED Risbrough relief base solely upon the purported "assignment" of Debtors judgment, and specifically preserved the right for the Trustee to file an avoidance action against the "assignment" of the Debtors former asset.

Specifically, Risbrough's attempt to compel abandonment under 11 U.S.C. 554, under a claim of a "priority lien" was DENIED. The ulterior purpose for Risbrough seeking abandonment under "lien priority" before this Court was simply to manipulate this Court into granting an Order that would have preclusive effect upon the State Court. This is not the first time Risbrough has sought to mislead the trial court, noting Judge Colaw's findings that Risbrough misrepresented the Court of Appeals ruling.

Despite what appears to be clear and unambiguous language of this Court's Relief Order, Risbrough returned to State Court pursing <u>both</u> theories. The reasons are obvious. With the purported "assignment" Risbrough is subject to an automatic offset of judgment against judgment [See Trial Court's Minute Order April 16, 2013 attached hereto as **Exhibit B**]. Further collateral consequences also place Risbrough in certain jeopardy: Risbrough may not seek attorney fees post assignment date from April 2011

onwards, for he represented himself *pro se* and is barred from incurring his own fees under Trope v. Katz (1995) 11 Cal.4th 274 and its progeny.

Faced with problems from "stepping into the shoes" of the Debtors via the "assignment", Risbrough has no choice but to continue the Debtors/Risbrough's Writ premised upon theories which were clearly denied by this Court's Relief Order.  Indeed, Risbrough is still litigating the Writ on behalf of the Debtors, which coupled with the Debtors settled statement in the *Avetoom v. Fridman* case's settled statement, wherein he Debtors testified they had paid Risbrough "in payments" for his attorney fees, leaves more questions unanswered regarding the surreptitious and concealed transfer.

Notably, Risbrough was the Debtors trial counsel in the *Avetoom v. Fridman* case (OCSC # 30-2010-00345490) wherein he specifically answered under oath, that any judgment against the Debtors would be "subject to an offset/setoff."  Clearly he wasn't planning on the Debtors true colors coming out, earning a million dollar verdict, and the sudden appearance of a notice of assignment, previously undisclosed for several years.  Indeed, the Debtors testified under oath in their '341' hearing they made no transfers in 2011.  Which refutes Risbrough's claim of the assignment.

This abrogation of the Court's January 5, 2013 Relief Order should not be condoned for several reasons.

Because relief from stay orders are narrowly/strictly construed, Risbrough should not be allowed to expand the scope of relief or mislead the state trial court as to the scope of relief, simply because it is self serving for one creditor, himself.  Second, by allowing Risbrough to expand and abrogate this Court's Order in the State Court, he leaves Creditors Beach Crest Villas and Karl Avetoom with no other option than oppose Risbrough's sharp tactics which appear to violate this Court's Order, and potentially violates the '362' Stay itself.

Accordingly, in the best interest of the Creditors and potentially the estate, seeking an Order clarifying that this Court's January 17, 2013 Order limits Risbrough to pursue his writ in the state court under the "assignment" claim only, and not allow him

MOTION FOR CLARIFICATION OF RELIEF FROM STAY ORDER {Docket 121 - JANUARY 17, 2014]

1  to expand or mislead the scope of relief by pursuing theories and claims which this

2  Court DENIED in its order.

3      Further clarification, on the issue of pursuit of a claim in state court, which was

4  DENIED in Risbrough's petition for relief, would violate this Court's January 17, 2013

5  Order, and/or possibly the '362' Stay.   Furthermore, would Movant and other creditors

6  be in jeopardy of being compelled to litigate matters DENIED relief by this Court?

7

8  **IV.  <u>CONTINUANCE OF THE CLAIM NOT GRANTED RELIEF BY THIS</u>**

9      **<u>COURT SEEKS TO EXPAND ON THE RELIEF OBTAINED IN</u>**

10     **<u>VIOLATION OF THE ORDER.</u>**

11     The automatic stay provisions of the bankruptcy code prohibits "any act to obtain

12 possession of property of the estate ... or to exercise control over property of the estate."

13 § 362(a)(3). Where the language of the code is plain, it is to be enforced according to its

14 terms. <u>United States v. Ron Pair Enterprises, Inc.</u>, 489 U.S. 235, 241 (1989); <u>In re</u>

15 <u>White</u>, 186 B.R. 700, 703 (B.A.P. 9th Cir.1995).  See <u>In re Chau</u> (D. Nev., Feb. 11,

16 2014, BR S-12-19953-MKN) 2014 WL 547901

17     The stay also protects *creditors from each other*. [Sen. Rep. No. 95–989 (1978);

18 see <u>Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n</u> (9th Cir. 1993) 997 F.2d 581,

19 585–586; <u>In re Bialac</u> (9th Cir. 1983) 712 F.2d 426, 431]

20     Undeniably Ninth Circuit follows the majority view in holding that acts in

21 violation of the automatic stay are void (not merely voidable). [See <u>In re Gruntz</u> (9th

22 Cir. 2000) 202 F.3d 1074, 1081–1082—because judicial proceedings in violation of stay

23 are void, bankruptcy court not obligated to extend full faith and credit to such

24 judgments; <u>Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n</u> (9th Cir. 1993) 997 F.2d

25 581, 586—actions taken by state agency to dissolve debtor corporation while stay was

26 in effect were void]

27     Risbrough represented to <u>this</u> Court, as well as the State Court, that he was

28 *assigned* the rights to Debtors' judgment because the "debtors have been unable to

8

collect their judgment." However, the California Supreme Court in <u>National R. Co. v.
Metropolitan T. Co.</u> (1941) 17 Cal.2d 827, 831, stated that

> "[i]t is well established that an assignment of a chose in action
> for collection *vests the legal title in the assignee* whether or
> not any consideration is paid therefor. **In such case the
> assignee may maintain a suit thereon in his own name, even
> though the assignor retains an equitable interest in the thing
> assigned.** [Citations.]" (emphasis added; see also <u>Harrison v.
> Adams</u> (1942) 20 Cal.2d 646, 650 ["An assignment for
> collection vests legal title in the assignee which is sufficient to
> enable him to maintain an action in his own name, **but the
> assignor retains the equitable interest in the thing
> assigned**"].)

This seemingly invokes the '362' Stay as if the Debtors still retain any equitable
interest in the assigned judgment for collection, under 11 U.S.C. 541(a)(1), the
judgment is part of the estate ("*all legal or equitable interests of the debtor in property
as of the commencement of the case*").  Indeed, Risbrough is still litigating the Writ on
behalf of the Debtors, and not himself.

However, Risbrough's continued abrogation of this Court's Order expands the
scope of relief to the "lien priority" which is again problematic, for if Risbrough has a
"lien", which the State Court also considers potentially unenforceable [Exhibit B] then
the Debtors would, of course, have an interest.  Risbrough has now admitted that
Creditors Beach Crest and Movant have an interest in the Debtors' judgment.  This
places these Creditors at a disadvantage due to the unauthorized expansion of the scope
of relief in the state trial court.

Because the State Trial Court has ordered Briefing on the lien issues[1],
inconsistent with the scope of relief granted by this Court, Beach Crest and Movant now
have to file oppositions in the state court.  Hence, Beach Crest and Movant are now

---

[1] A true and correct copy of State Court Judge Thierry Colaw's 6/13/2014 Minute Order
is submitted concurrently by separate Request for Judicial Notice.

9

MOTION FOR CLARIFICATION OF RELIEF FROM STAY ORDER {Docket 121 - JANUARY 17, 2014]

obligated to take legal action inconsistent with this Court's January 5, 2013 relief Order.

In Wardrobe, the Court held that a state court's unauthorized expansion of relief from stay caused by a creditor resulted in "the state court impermissibly modified the stay as to Wardrobe," resulting in a violation of the stay and leaving the findings "void and without preclusive effect." The BAP remanded to the bankruptcy court "to hear evidence and to make its own findings, as appropriate, on Griffin's § 523(a)(2)(A) cause of action against the debtors." In re Wardrobe at 934

Accordingly, due to the continued pursuit of claims that this Court denied relief on, the scope of relief must be made clear, so that neither Creditors run afoul of this Court's Relief Order, or possibly violate the '362' stay itself.

## V.  **CONCLUSION.**

Accordingly, as the Ninth Circuit holds relief from Stay Orders are narrowly construed, this Court should issue an Order clarifying that the State Court action shall only proceed according to the claimed "assignment" claim, that this Court GRANTED relief solely upon, and restrict pursuing the DENIED material of a purported "lien priority" over the Debtors' judgment.  The judgment either belongs outright to Risbrough, which is for collection only, leaves the Debtors an equitable interested under 11 U.S.C. 541(a)(1), or Risbrough has only a "lien" and the Debtors still retain interested under 11 U.S.C. 541.

This Court should also clarify if pursuit of "lien" material for which this Court DENIED relief from the stay, expands and thus violates of the Court's Order and/or a violates of the '362' Stay consistent with the Ninth Circuit Court of Appeals rulings set forth herein, and conversely, would Movant and other creditors be in jeopardy of running afoul of this Court's relief from stay motion by engaging in expansion of the Order, or implicate the "stay' itself.

The Ninth Circuit Court of Appeals holds relief from stay orders to be narrowly construed.  Clarification is required to make sure Risbrough, Movant and other joining Creditors do not run afoul of this Court's narrow order or the Stay itself.

1

2

3    Dated:  July 8, 2014

4

5                                              By:  _____

6                                                   Karl Avetoom
                                                    Creditor
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14

# EXHIBIT A

(This Court's January 17, 2013 Relief from Stay Order)

17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR CLARIFICATION OF RELIEF FROM STAY ORDER {Docket 121 - JANUARY 17, 2014]

1  **WEILAND, GOLDEN,**
   **SMILEY, WANG EKVALL & STROK, LLP**
2  Jeffrey I. Golden, State Bar No. 133040
   jgolden@wgllp.com
3  Beth E. Gaschen, State Bar No. 245894
   bgaschen@wgllp.com
4  650 Town Center Drive, Suite 950
   Costa Mesa, California 92626
5  Telephone:   (714) 966-1000
   Facsimile:    (714) 966-1002
6
   Attorneys for Creditor
7  Darling & Risbrough, LLP

```
┌─────────────────────────────┐
│   FILED & ENTERED           │
│                             │
│      JAN 17 2013            │
│                             │
│   CLERK U.S. BANKRUPTCY COURT│
│   Central District of California│
│   BY reid      DEPUTY CLERK │
└─────────────────────────────┘
```

8              **UNITED STATES BANKRUPTCY COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10                  **SANTA ANA DIVISION**

11  In re                              Case No. 8:12-bk-11721-ES

12  MOISEY FRIDMAN and ROSA FRIDMAN,   Chapter 7

13                    Debtors.         **ORDER GRANTING THE MOTION FOR**
                                       **AN ORDER:**
14
                                       **(1)  DETERMINING THAT 11 U.S.C. § 362**
15                                          **DOES NOT STAY THE STATE COURT**
                                            **LITIGATION OR,**
16
                                       **(2)  GRANTING RELIEF FROM THE**
17                                          **AUTOMATIC STAY, OR, IN THE**
                                            **ALTERNATIVE,**
18
                                       **(3)  COMPELLING ABANDONMENT OF**
19                                          **THE JUDGMENT PURSUANT TO**
                                            **11 U.S.C. § 554**
20
                                       **DATE:    January 3, 2013**
21                                     **TIME:    10:30 a.m.**
                                       **PLACE:   Courtroom 5A**
22                                              **411 West Fourth Street**
                                                **Santa Ana, California 92701**
23

24

25       On January 3, 2013, at 10:30 a.m., in Courtroom 5A of the United States

26  Bankruptcy Court located at 411 W. Fourth Street, Santa Ana, California 92701, the Court

27  heard the *Motion for an Order: (1) Determining that 11 U.S.C. § 362 Does Not Stay the*

28  *State Court Litigation, or (2) Granting Relief from the Automatic Stay, or, in the Alternative,*

773494.1                              1                                  ORDER

1   *(3) Compelling Abandonment of the Judgment Pursuant to 11 U.S.C. § 554* (the "Motion")

2 [Docket No. 83] filed by Darling & Risbrough, LLP ("Darling & Risbrough").  Appearances

3 were as noted on the record.

4       Having considered the Motion and all papers filed in support thereof and in

5 opposition thereto, and oral arguments made at the hearing,

6     **IT IS HEREBY ORDERED** that:

7      1.    The Motion is granted as set forth herein.  The State Court Litigation[1] is not

8 stayed by 11 U.S.C. § 362 as to the Judgment itself as it is not property of the Debtors'

9 bankruptcy estate as the assignment of the Judgment to Darling & Risbrough was

10 executed prior to the bankruptcy filing and appears valid.  Relief from the automatic stay is

11 granted to allow the State Court Litigation to proceed as it relates to the condominium unit

12 currently owned by the Debtors.

13      2.    The request to compel abandonment of the Judgment pursuant to 11 U.S.C.

14 § 554 is denied.

15      3.    The disposition of the Motion is without prejudice to the Karl T. Anderson,

16 the chapter 7 trustee for the bankruptcy estate of Moisey and Rosa Fridman, from

17 pursuing any avoidance actions he deems appropriate.

18         ###

19

20

21

22

23

24 Date: January 17, 2013

25              Erithe Smith
             United States Bankruptcy Judge

26

27 [1] Any and all capitalized terms not expressly defined herein shall have the meaning ascribed to them in

28 the Motion.

Weiland, Golden,
Smiley, Wang Ekvall & Strok, LLP
650 Town Center Drive, Suite 950
Costa Mesa, California 92626
Tel 714 - 966 -1000  Fax 714 - 966 -1002

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*): **ORDER GRANTING THE MOTION FOR AN ORDER: (1) DETERMINING THAT 11 U.S.C. § 362 DOES NOT STAY THE STATE COURT LITIGATION OR, (2) GRANTING RELIEF FROM THE AUTOMATIC STAY, OR, IN THE ALTERNATIVE, (3) COMPELLING ABANDONMENT OF THE JUDGMENT PURSUANT TO 11 U.S.C. § 554** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner stated below:

**1.    SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** - Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*) **January 8, 2013**, the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below:

Karl T Anderson (TR)    edansie@hotmail.com, kanderson@ecf.epiqsystems.com
David W Brody    dbrody@brody-law.com, bknotice@brody-law.com
Matthew E Faler    mfaler@faler-law.com
Beth Gaschen    bgaschen@wgllp.com
Michael J Hauser    michael.hauser@usdoj.gov
Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
Thomas J Polis    tom@polis-law.com
Lisa Torres    ltorres@gogglaw.com, lgodat@gogglaw.com
United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
Gilbert B Weisman    notices@becket-lee.com

☐ Service information continued on attached page

**2.    SERVED BY THE COURT VIA UNITED STATE MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:

Moisey Fridman
1100 Rutland Rd. #7
Newport Beach, CA 92660

☐ Service information continued on attached page

**3.    TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by United States mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following persons and/or entities at the addresses, facsimile transmission numbers and/or email addresses stated below:

Karl Avetoom, 1100 Rutland Rd., #9, Newport Beach, CA 92660

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
773494.1

**F 9021-1.1.NOTICE.ENTERED.ORDER**

**United States Bankruptcy Court**
**Central District of California**

**Santa Ana**

**Judge Erithe Smith, Presiding**

**Courtroom 5A Calendar**

Thursday, January 3, 2013                                                    Hearing Room    5A

10:30 am

  8:12-11721    **Moisey Fridman and Rosa Fridman**                                Chapter   7
    #20.00          Hearing RE: Motion for an Order: (1) Determing that 11 U.S.C. Section
                    362 does not stay the State Court litigation or, (2) Granting relief from the
                    automatic stay, or, in the alternative, (3) Compelling abandonment of the
                    judgment pursuant to 11 U.S.C. Section 554

                                    Docket #:   83

**Courtroom Deputy:**
    - NONE LISTED -

**Tentative Ruling:**

   **January 3, 2013**

   Grant motion determining that Section 362 does not apply to the assigned judgment itself;
   granting relief from stay to proceed with writ of mandate which, if successful will require a
   special assessment against each condominium, including the unit owned by debtors
   (which would otherwise be protected by the automatic stay). Deny alternative request to
   compel abandonment.

   The assignment of the judgment to the Darling & Risbrough firm was executed prior to the
   bankruptcy filing and appears valid.  The disposition of the motion is without prejudice to
   the trustee pursuing any avoidance actions he deems appropriate.

   The court is not persuaded that the pending nondischargeability action in any way
   implicates the subject judgment.

                                    Party Information

     Debtor(s):
         Moisey  Fridman                                Represented By
                                                    Matthew E Faler

     Joint Debtor(s):
         Rosa Fridman                                   Represented By
                                                    Matthew E Faler

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT B

(Trial Court Judge Thierry Colaw's April 16, 2013 Order)

(See also separate request for Judicial Notice filed Concurrently)

MOTION FOR CLARIFICATION OF RELIEF FROM STAY ORDER {Docket 121 - JANUARY 17, 2014]

### SUPERIOR COURT OF CALIFORNIA,
### COUNTY OF ORANGE
### CENTRAL JUSTICE CENTER

### MINUTE ORDER

DATE: 04/16/2013                    TIME: 09:41:00 AM        DEPT:  C25

JUDICIAL OFFICER PRESIDING: Thierry Patrick Colaw
CLERK:  P. Rief
REPORTER/ERM: None
BAILIFF/COURT ATTENDANT:  Edwin Hong

CASE NO: **30-2010-00424435-CU-WM-CJC** CASE INIT.DATE: 11/12/2010
CASE TITLE: **Fridman vs. Beach Crest Villas Homeowners Association**
CASE CATEGORY: Civil - Unlimited        CASE TYPE: Writ of Mandate

---

EVENT ID/DOCUMENT ID: 71697336
**EVENT TYPE**: Under Submission Ruling

---

**APPEARANCES**

---

1. PETITION FOR WRIT OF MANDATE; and

2. MOTION OF JUDGMENT CREDITORS FOR ATTORNEYS' FEES OF $160,346.46 AS COSTS IN ENFORCING JUDGMENT

There are no appearances by any party.

The Court, having taken the above-entitled matters under submission on 04/05/2013 and having fully considered the arguments of all parties, both written and oral, as well as the evidence presented, now rules as follows:

**NOTICE OF RULING**

1. The petition for writ of mandate by the Fridman plaintiffs is ordered STAYED pending resolution of the appeal in *Avetoom v. Fridman, et al*. *See, C.C.P.* § 128.

(a) Defendant Beach Crest Villas has raised the affirmative defense of offset based on a partial assignment of the judgment in the *Avetoom* case in its answer to the writ petition. [*See* Return to Writ of Mandate by Verified Answer filed 12-30-11, Tenth Affirmative Defense.]

Until the judgment in *Avetoom* is final this court cannot determine what, if any, offset is warranted against the judgment rendered in favor of the Fridman plaintiffs that has been assigned to their counsel, Darling & Risbrough, LLP. The court notes that petitioners are seeking an assessment of $38,075.64 per condominium unit against Beach Crest Villas absent any offset. It would an enormous waste of resources to adjudicate the Writ now when any assessment would be affected by the set-off should one

---

CASE TITLE: Fridman vs. Beach Crest Villas                CASE NO: **30-2010-00424435-CU-WM-CJC**
Homeowners Association

be granted.

(b) In addition further briefing will eventually be required as follows:

(1) First, can the Fridman plaintiffs recover more than the $165,676.59 sought in their writ petition filed on 11-12-10?

(2) Second, is the bankruptcy court's ruling that any special assessment rendered would also include the Fridmans' condominium binding on this court? Judge Smith explained that: "Grant motion determining that Section 362 does not apply to the <u>assigned</u> judgment itself; granting relief from stay to proceed with the writ of mandate which, if successful will require a special assessment against each condominium, including the unit owned by debtors (which would otherwise be protected by the automatic stay). Deny alternative request to compel abandonment." (Emphasis added.)

(3) Third, is Beach Crest Villas entitled to seek an offset based on the partial assignment of the judgment in *Avetoom*, and if so, how this sum is determined and full evidentiary support for any such claim.

2. Additional comments based upon the arguments at the hearing on 4-5-13:

(a) At the hearing the Fridman plaintiffs implied that the Court of Appeal reversed with directions for this court to proceed with issuance of a writ. This misstates the record. The Court of Appeal reversed the trial court [Judge Hunt], finding that the trial court erred in concluding that, as a matter of law, a basis for a petition for writ of mandate had not been pled.

There was no reversal with instructions to the trial court.

In fact, the Court of Appeal specifically noted that: "Beach Crest correctly notes that the issuance or denial of a writ of mandate lies within the discretion of the trial court when the matter proceeds to trial. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 593.) Because the court here decided the matter on demurrer, however, the de novo standard of review applies." (*See*, Remittitur filed 12-1-11, Decision, p. 4.) In *County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, the County of San Diego court explained that: "Issuance of a writ of mandate 'is not necessarily a matter of right, but lies rather in the discretion of the court, but where one has a substantial right to protect or enforce, and this may be accomplished by such a writ, and there is no other plain, speedy and adequate remedy in the ordinary course of law, [the petitioner] is entitled as a matter of right to the writ, or perhaps more correctly, in other words, it would be an abuse of discretion to refuse it. ' [Citations.]' (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 114, 40 Cal.Rptr.2d 839, 893 P.2d 1160.)" See, *County of San Diego*, at 593. Relatedly, the Court of Appeal was not addressing how this trial court should handle any offset issue during this writ proceeding as respondent Beach Crest Villas had not filed any answer to the petition at that time and the issue was thus only whether a proper basis for a petition for writ of mandate had been pled, i.e., a pleading decision as the court noted at the hearing on 4-5-13.

(b) Next, despite objecting to respondent Beach Crest Villas' supplemental brief raising the offset issue, at the hearing on 4-5-13 the Fridman petitioners now seek to have the trial court address the offset issue on the merits rather than stay this civil action to await the outcome of the appeal in *Avetoom*. Petitioners cited the cases of *Brienza v. Tepper* (4th Dist. 1995) 35 Cal.App.4th 1839 and *Cetenko v. United California Bank* (1982) 30 Cal.3d 528 in support. The *Brienza* decision was rendered by Division 3 of the Fourth District Court of Appeal. For the reasons discussed below, both the *Brienza* case and the *Cetenko* cases are lien priority cases and <u>do not hold that no offset can be made under the</u>

CASE TITLE: Fridman vs. Beach Crest Villas                CASE NO: **30-2010-00424435-CU-WM-CJC**
Homeowners Association

circumstances in the present case as the Fridman petitioners contend.

(i) *C.C.P.* § 431.70 provides that: "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section shall not exceed the value of the relief granted to the other party. The defense provided by this section is not available if the cross-demand is barred for failure to assert it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a 'demand for money' and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9." As discussed above, respondent Beach Crest Villas raised the affirmative defense of offset in its answer to the Fridman petitioners' writ petition. (*See*, Return to Writ of Mandate by Verified Answer filed 12-30-11, Tenth Affirmative Defense.)

(ii) In *Brienza v. Tepper* (4th Dist. 1995) 35 Cal.App.4th 1839, the *Brienza* court noted that: "Tepper's offset motion was opposed by Brienza on March 17, 1993. Brienza did not contest Tepper's position that the Colorado judgment may be used as an offset to Brienza's judgment. However, Brienza argued that Mazzanti's lien for attorney fees and costs established by the January 24, 1991, retainer agreement in Brienza's lawsuit against Tepper had priority over any offset allowed to Tepper." *Id.*, at 1842 to 1843. The *Brienza* court then noted the trial court ruled as follows: "Tepper's offset motion was heard on March 25, 1993. On May 28, 1993, the court filed its statement of decision which granted Tepper's motion except as to Mazzanti's lien for fees and costs pursuant to the retainer agreement." *Id.*, at 1843. The *Brienza* court then stated: "Tepper contends the court erred in granting Mazzanti's lien for attorney fees and costs priority over the offset based upon the Colorado judgment against Brienza. Because this issue presents solely a question of law, we exercise our independent judgment on appeal. (*Jongepier v. Lopez* (1983) 142 Cal.App.3d 535, 538 [191 Cal. Rptr. 131].)" See, *Brienza*, at 1843. Arguably the *Brienza* court's discussion about attorney charging liens and associated public policy, as discussed below, is all dicta. The *Brienza* court explained that: "In a similar light, we note the court in *Salaman* stated '[a]s a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies subject to any right to offset or other defenses existing against the assignor prior to actual notice of the assignment. (Civ. Code, § 1459; Code Civ. Proc., § 368.)' (*Salaman, supra, 74 Cal.App.3d at p. 919.*) The court then applied this rule against attorney Field as a lien claimant from his judgment debtor (Bolt). (*Ibid.*)" See, *Brienza*, at 1848. The *Brienza* court then concluded that: "If we apply the rule that an assignee 'stands in the shoes of his assignor' then FIB could assign Tepper no greater rights than FIB possessed. As such, as between competing third party claimants, Mazzanti by his contractual lien established on January 24, 1991, had priority over FIB's Colorado judgment obtained on April 4, 1991, and later assigned to Tepper. On these facts alone, we are satisfied the court was correct in according Mazzanti's lien for attorney fees priority over Tepper's offset claim based on his acquisition of the Colorado judgment." See, *Brienza*, at 1848 to 1849. Thus the *Brienza* court could have rendered its decision under general principles of lien priority without any discussion of attorney charging liens and the public policies involved in giving priority to such attorney liens.

(iii) Even though the *Brienza* court could have rendered a decision limited to general rules of lien priority, the court went further to discuss the nature of attorney charging liens and associated public policies. Some of the language in this area is what was cited by the Fridman petitioners. But there are

differences. First, the *Brienza* court was addressing an attorney's charging lien arising from a contingency fee agreement. *Id.*, at 1841 to 1842. There is no contingency fee agreement at issue in the Fridmans' case. A judgment in that contingency fee action was rendered in favor of Brienza against Tepper in the sum of $99,723.00 plus post judgment interest. *Id.*, at 1842. The judgment in this *Brienza* action was entered on 7-8-1992. *Id.* In March 1991, in Colorado, First Interstate Bank (hereinafter "FIB") obtained a judgment against Brienza in the sum of $119,035.83 with post judgment interest thereon. *Id.* On 9-16-92, FIB assigned this Colorado judgment against Brienza to Tepper in exchange for $13,500.00. *Id.* On 9-24-92, Tepper domesticated this Colorado judgment pursuant to *C.C.P.* § 1710.25 and this judgment became final in California on 10-28-92. *Id.* On 1-29-93, Tepper filed a motion for an offset. *Id.* The trial court in Brienza granted the motion for offset but gave priority to the attorney's charging lien based on the contingency fee agreement. *Id.* Tepper appealed. *Id.*, at 1843.

The *Brienza* court explained that: "From *Margott* and *Salaman* we accept the principle that a judgment debtor who has acquired a judgment or claim against his judgment creditor may ask the court in which the judgment against him was rendered to have his judgment or claim offset against the first judgment. The offset of judgment against judgment is a matter of right absent the existence of facts establishing competing equities or an equitable defense precluding the offset. (*Harrison v. Adams, supra*, 20 Cal.2d at pp. 648-649.)" See, *Brienza*, at 1847 to 1848. The *Brienza* court then further commented: "As we view our task, we must determine under the facts of this case if sufficient equitable grounds exist to accord Mazzanti's contractual lien priority over Tepper's equitable right of offset. We conclude the equities in this case clearly support and should dictate this result." *Id.*, at 1848. The *Brienza* court then explained that: "At the outset, we understand Brienza is insolvent and is unable to pay either attorney fees to Mazzanti or satisfy the Colorado judgment obtained by FIB and assigned to Tepper. By according priority to Mazzanti's lien for attorney fees, Tepper will still be able to assert an offset to a substantial portion of Brienza's judgment against him. This result is unlike *Salaman* where granting priority to the attorney's statutory lien would have totally defeated the equitable offset. (*Salaman, supra*, 74 Cal.App.3d at pp. 917-918.)" See, *Brienza*, at 1848. The *Brienza* court further explained that: "As noted previously in discussing *Salaman*, Tepper's assignment of FIB's Colorado judgment was not a true equitable offset between the parties as existed in *Salaman*. Here, the record established Tepper purchased the $143,041.03 Colorado judgment against Brienza for $13,500. Given Brienza's insolvent status, Tepper clearly had the superior bargaining position to acquire the assignment of the judgment at substantially less than full value. While we recognize Tepper was within his right in seeking and obtaining the Colorado judgment to use as an offset, we cannot accord it the same weight in equity as a true equitable offset between the parties where judgment is obtained by filing suit, expending time and incurring fees and costs." *Id.* The *Brienza* court then cited that case of *Cetenko v. United California Bank* (1982) 30 Cal.3d 528 for the general public policy of giving an attorney's prior contractual lien for fees priority over a subsequent statutory lien. See, *Brienza*, at 1849 to 1850. The *Brienza* court concluded: "In balancing the competing equities, Mazzanti's equitable contractual lien for attorney's fees and costs should be accorded priority over Tepper's equitable offset claim." *Id.*, at 1850.

(iv) The *Brienza* court's decision makes clear that the trial court must assess various equitable factors, as discussed more below that have not been set forth before this court. Also, there is no separate res in this case with a competition between a contractual lien for attorney's fees and a setoff from a subsequent third party judgment. Further, as to the balance of Brienza's recovery in the action he was represented by attorney Mazzanti, except for the priority given to the attorney's fees lien, the balance of the recovery was subject to offset as ruled by the trial court.

(v) The Fridman petitioners also cited the case of *Cetenko v. United California Bank* (1982) 30 Cal.2d 528, the *Cetenko* court noted that: "The sole question for our determination in this case is whether a

CASE TITLE: Fridman vs. Beach Crest Villas          CASE NO: **30-2010-00424435-CU-WM-CJC**
Homeowners Association

prior lien on a judgment in favor of an attorney for legal fees takes precedence over a subsequent judgment creditor's lien perfected in accordance with the provisions of section 688.1 of the Code of Civil Procedure." C.C.P. § 688.1 has now been repealed and replaced by C.C.P. §§ 708.410 to 708.480. The *Cetenko* court noted that: "In November 1976, Francis Schwartz, an attorney, and Dr. Roman W. Cetenko, his client, entered into a written agreement which provided that Schwartz would represent Cetenko in an action to establish ownership of a parcel of real property, and that Cetenko would pay Schwartz a stated hourly rate for his services, plus costs. The agreement provided further that most of the fee would be deferred and that fees owed by Cetenko would become a lien upon any recovery in the action." *Id.*, at 530. The *Cetenko* court explained that: "A lien in favor of an attorney upon the proceeds of a prospective judgment in favor of his client for legal services rendered has been recognized in numerous cases. Such a lien may be created either by express contract, as in the present case (*Haupt v. Charlie's Kosher Market* (1941) 17 Cal.2d 843, 846 [112 P.2d 627]; *Tracy v. Ringole* (1927) 87 Cal. App. 549, 551 [262 P. 73]; see *Isrin v. Superior Court* (1965) 63 Cal.2d 153, 157 [45 Cal. Rptr. 320, 403 P.2d 728]), or it may be implied if the retainer agreement between the lawyer and client indicates that the former is to look to the judgment for payment of his fee (*Bartlett v. Pacific Nat. Bank* (1952) 110 Cal.App.2d 683, 689 [244 P.2d 91]; *Wagner v. Sariotti* (1943) 56 Cal.App.2d 693, 697-698 [133 P.2d 430])." See, *Cetenko*, at 531. The *Cetenko* court then noted: "Schaefer claims that Schwartz does not have a valid lien, despite the agreement that any judgment in Cetenko's favor would be subject to a lien for fees. Relying on the fact that the cases cited by Schwartz which have recognized an attorney's lien on a future judgment involve contracts for contingency fees, Schaefer claims that a lien on a judgment to secure the payment of hourly fees is invalid. She does not assert here that Schwartz's hourly clause was excessive or that he misrepresented the number of hours on which his fees were based, nor did she present such a challenge to the trial court. Rather, she argues that a contract for an hourly fee which is to constitute a lien on the judgment is unconscionable as a matter of law because the fee and the costs may consume the entire amount of the judgment recovered, whereas in the case of a contingency fee contract, only a portion of the judgment is paid to the attorney as his fee." *Id.*, at 531 to 532. The *Cetenko* court, in rejecting this contention, explained: "She cites no authority for this proposition. The fairness of the fee agreement and the lien to secure it must be viewed as of the time the arrangement was made. We discern nothing inherently unfair in an agreement to pay an attorney an hourly fee for his services. Indeed, in many instances it may be more advantageous to a client than a contract for a contingency fee. If the attorney succeeds in obtaining a judgment in the client's favor with a relatively modest expenditure of time, the client will retain a higher percentage of his recovery than would be the case with a contingency fee contract, which would require the payment of a percentage of the recovery regardless of the amount of the attorney's time expended. The fact that, as events turned out in the present case, the judgment was not as substantial as anticipated and proved to be insufficient to pay Schwartz's fees does not render the contract unconscionable at the time the agreement was made. Since the fee agreement was not invalid as unconscionable, it follows that the arrangement to secure payment of the fee by the imposition of a lien on the judgment cannot be challenged on that ground." *Id.*, at 532. The *Cetenko* court then concluded that: "Public policy favors the conclusion we reach in this case. If an attorney's claim for a lien on the judgment based on a contract for fees earned prior to and in the action cannot prevail over the lien of a subsequent judgment creditor, persons with meritorious claims might well be deprived of legal representation because of their inability to pay legal fees or to assure that such fees will be paid out of the sum recovered in the latest lawsuit. Such a result would be detrimental not only to prospective litigants, but to their creditors as well. It must be observed that Dr. Cetenko, the client, makes no objection to the use of his judgment to partially satisfy his attorney's several claims. The only objection comes from a stranger to the proceedings, one whose judgment lien was obtained long after the attorney's lien was agreed upon by contract." *Id.*, at 535 to 536.

Both the *Brienza* case and the *Cetenko* case deal with attorney lien priority to a recovery and not the

CASE TITLE: Fridman vs. Beach Crest Villas        CASE NO: **30-2010-00424435-CU-WM-CJC**
Homeowners Association

issue of offset. The *Brienza* court specifically noted that there was no dispute as to the right of offset, the issue was whether an attorney charging lien based on a contingency fee agreement takes precedence over a subsequent judgment against the client on whose behalf that recovery was obtained. First, the *Brienza* case, as that court explained, could have been resolved by resort to general principles of lien priority. The *Brienza* court's discussion about attorney charging liens and equitable principles is actually dicta. Similarly, the *Cetenko* court was addressing the priority of attorney's lien in relation to a recovery and then a subsequent judgment. Second, at this time, no court has determined that Darling & Risbrough, LLP has a charging lien in any recovery on behalf of the Fridmans. Instead, the bankruptcy court concluded that the assignment by the Fridmans to Darling & Risbrough, LLP "appears to be valid" but left open the possibility that the bankruptcy trustee could assert a claim for fraudulent conveyance in light of the bankruptcy filed by the Fridmans plaintiffs after a judgment was rendered in favor of plaintiff Avetoom in a subsequent action. Third, even the *Brienza* dicta noted that court must weigh various equitable factors when determining lien priority. No such evidence has been presented to this court to permit it to weigh the equities in regard to what should be the lien priority.

In summary, the *Brienza* and *Cetenko* decisions do not establish that Beach Crest Villas is not entitled to an offset as a matter of law. Therefore, since the Fridman petitioners cannot establish that Beach Crest Villas is not entitled to an offset as a matter of law, particularly as to the assignment of the Fridmans' initial judgment based on the arbitration award to Darling & Risbrough, LLP, the Fridmans' petition for writ of mandate should be stayed, pursuant to *C.C.P.* § 128, until resolution of the appeal in *Avetoom v. Fridman, et al.*

Of course, after resolution of the *Avetoom* appeal, respondent Beach Crest Villas will have the burden of establishing its affirmative defense of offset. This would include the very basic evidence demonstrating an actual assignment from plaintiff Avetoom to Beach Crest Villas of at least a partial assignment of his judgment against the Fridmans in the *Avetoom* civil action.

In addition, not fully addressed at oral argument, are other issues. These include: (1) whether the Fridman petitioners can seek a recovery in excess of the sum set forth in their writ petition, (2) whether the bankruptcy court's ruling that all units, including the Fridmans' unit, would be subject to a special assessment is binding on this court, and (3) what portion, if any, of the judgment in favor of the Fridmans may be subject to an offset. Also, based on *Brienza* and *Cetenko*, whether, in addition to an assignment of the judgment, does Darling & Risbrough, LLP possess a charging lien in the judgment rendered in favor of the Fridman plaintiffs based on their fee agreement with the Fridmans? Relatedly, there is the issue that if Darling & Risbrough LLP have a charging lien in the Fridmans' recovery did Darling & Risbrough make the required disclosures to render such an agreement enforceable. See, *Fletcher v. Davis* (2004) 33 Cal.4th 61, 64.

3. Petitioners' motion for attorney's fees is denied in part and otherwise is premature.

(a) The petition is denied as to petitioners' claim for attorney's fees of $49,121.46 generated by bankruptcy counsel. The need for bankruptcy counsel was caused by the bankruptcy filing of the Fridman plaintiffs in which Darling & Risbrough were a listed creditor and not by a bankruptcy filing by respondent Beach Crest Villas. Hence Darling & Risbrough were not seeking to lift a stay caused by Beach Crest Villas to which a claim for attorney's fees as reasonable and necessary to enforce the judgment could be made. Instead, such bankruptcy fees were the result of actions by the Fridman plaintiffs and thus not reasonably and necessarily related to conduct by Beach Crest Villas.

(b) The balance of the claim for attorney's fees incurred by Darling & Risbrough on the writ and for

CASE TITLE: Fridman vs. Beach Crest Villas          CASE NO: **30-2010-00424435-CU-WM-CJC**
Homeowners Association

enforcement of the judgment is <u>premature</u> as the writ hearing has not even occurred and there will be more issues to be addressed resulting in the issue of further attorneys' fees. The court's ruling on 3-15-12 is thus still applicable as to attorney's fees generated by Darling & Risbrough relating to the writ and the enforcement of the judgment.

4. The matter is set for a **Status Conference on 6 December 2013 at 9:00 AM** regarding the status of the *Avetoom* appeal and any needed briefing schedules

5. The Clerk shall give Notice.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

(Risbrough's May 30, 2014 Status Conference Update Brief)

(See also separate request for Judicial Notice filed Concurrently)

MOTION FOR CLARIFICATION OF RELIEF FROM STAY ORDER {Docket 121 - JANUARY 17, 2014]

1    ROBERT C. RISBROUGH, ESQ. (SBN 150596)
     DARLING & RISBROUGH, LLP
2    19200 Von Karman Ave., Suite 750
     Irvine, CA 92612
3    Tel: (714) 384-4250
     Fax: (714) 384-4251
4
     MARGARET A. ELDER, ESQ. (SBN 177424)
5    17011 Beach Blvd., Suite 900
     Huntington Beach, CA 91647
6    Tel.  (714) 375-6696
     Fax.  (714) 962-2807
7
     Attorneys for Petitioners MOISEY FRIDMAN and ROSA FRIDMAN
8

9

                 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10
                 **COUNTY OF ORANGE, CENTRAL JUSTICE CENTER**
11

12
     **MOISEY FRIDMAN** and **ROSA**          )  **CASE NO:**  30-2010-00424435
13   **FRIDMAN,**                             )  (Related to Case No. 07CC09589)
                                              )  [Appellate Court Case No. G044704]
14                    Petitioners,            )  *Assigned for all purposes to:*
                                              )  *Honorable Thierry Patrick Colaw*
15   v.                                       )  *Dept: C25*
                                              )
16                                            )  **STATUS CONFERENCE STATEMENT**
     **BEACH CREST VILLAS**                   )  **OF PETITIONERS MOISEY AND ROSA**
17   **HOMEOWNERS ASSOCIATION,** a            )  **FRIDMAN**
     California corporation,                  )
18                                            )  Status Conference
                      Respondent.             )  Date:   June 13, 2014
19                                            )  Time:   9:00 a.m.
                                              )  Dept:  C25
20   _____ )

21                                            *Petition filed: November 12, 2010*

22   TO THE HONORABLE COURT:

23        Petitioners Moisey and Rosa Fridman hereby submit their Status Conference Statement as

24   follows.

25   **A.    THE CASE**

26        In June 2007, the Fridmans, an elderly couple on a fixed income, began receiving weekly

27   fines of $50.00 from their Homeowners Association.  The pretext for the fines was the claim that

28   the Fridmans' air conditioner, which had been in place since 1999, violated the Covenants,

                                              1

5-30-14

1  Conditions & Restrictions of the community.  In actuality, a series of e-mails provided to the

2  Fridmans by one of their neighbors revealed that the newly elected president of the Homeowners

3  Association, Karl Avetoom, outlined his scheme to a neighbor by saying, "I'm going to drive

4  them out of here.  I'm going to get on the board, and I'm going to fine them for everything so

5  they will leave."[1]  Thus, the air conditioner and fines were mere pretext to force the Fridmans

6  from the small community.

7          Eventually, after a great deal of litigation and a "scorched earth" approach taken by the

8  Association, the parties agreed to binding arbitration.[2]  The parties agreed through the arbitration

9  contract that all rights to appeal were waived and that each side would abide by the determination

10  of the arbitrator.

11          In March 2009, a three-day arbitration took place before arbitrator Tom Dillard of

12  Judicate West.  Mr. Dillard found that the Fridmans prevailed on all seven causes of action.  The

13  arbitrator recognized that the "scorched earth" approach taken by the Association gave rise to

14  extraordinary expenses on both sides.  He found, "Plaintiff is the prevailing party and is entitled

15  to attorneys' fees and the case law gives the arbitrator the sound discretion to determine the

16  reasonableness of the requested fees and costs."  The arbitrator thereafter awarded the Fridmans

17  $110,000.00 in attorneys' fees and costs of $18,821.98.

18  **B.**    **THE JUDGMENT**

19          On July 9, 2009, the Fridmans petitioned the Court to confirm the arbitration award.  The

20  Homeowners Association shortly thereafter filed a Petition to Vacate and/or Correct the

21  Arbitration Award.  On August 4, 2009, the Court confirmed the Arbitration Award.

22          On August 21, 2009, the Orange County Superior Court entered judgment in favor of the

23  Fridmans.[3]  On October 2, 2009, the Fridmans filed an Abstract of Judgment and a Writ of

24

25          [1] Attached hereto as **Exhibit A** are selected copies of the e-mails by homeowner's association president,
26  Karl Avetoom

27          [2] Before filing a lawsuit, the Fridmans met their statutory obligation of requesting Alternative Dispute
   Resolution.  The Association's attorney refused, stating "we welcome a lawsuit," thereby forcing the Fridmans' hand.
28
           [3] Judgment, **Exhibit B.**

2

**STATUS CONFERENCE STATEMENT**

1  Execution in the amount of $129,094.01.

2  **C.    THE APPEAL**

3       In spite of the express condition of arbitration that, "all right to jury trial, the right to trial

4  de novo and appeal are waived," the Association filed an appeal.  In response, on November 25,

5  2009, the Fridmans filed a motion to dismiss the appeal and a motion for appellate sanctions

6  based upon the fact that all sides had knowingly waived their right to appeal when agreeing to

7  arbitration in order to fully, finally and expeditiously resolve the matter.  As was pointed out in

8  the Fridmans' Motion for Appellate Sanctions, "It appears that the only reason the Beach Crest

9  Villas Homeowners Association is proceeding with an appeal in the face of an agreement which

10  waives all right to appeal is to delay payment of the judgment . . ."

11       On August 4, 2010, the Court of Appeal issued its opinion, concluding:

12           "The stipulation to arbitrate signed by Beach Crest and the
             Fridmans includes a specific reference to California Rules of
13           Court, rule 3.827(c), which reads: 'The judgment so entered has
             the same force and effect in all respects as, and is subject to all
14           provisions of law relating to, a judgment in a civil case or
             proceeding, *except that it is not subject to appeal* and it may not be
15           attacked or set aside except as provided in rule 3.828.  The
             judgment so entered may be enforced as if it had been rendered by
16           the court in which it is entered.' (Italics added).  Additionally, the
             stipulation reads: 'All rights to . . . appeal are waived.'  While
17           alone either provision of the stipulation would be a clear and
             express waiver of the right to appeal from the judgment confirming
18           the arbitration award, when read together, we conclude the waiver
             of the right to appeal is unassailable."[4]
19

20       The Court of Appeal dismissed the Association's appeal and granted the Fridmans their

21  costs.  On October 27, 2010, the trial Court granted Respondents an additional $20,797.00 for

22  attorneys' fees on appeal.

23  **D.    THE PETITION FOR A WRIT OF MANDATE**

24       Even after the dismissal of the Association's appeal and the award of even more costs, the

25  Beach Crest Villas Homeowners Association continued to refuse paying the judgment.  With no

26  other recourse, the Fridmans went back to the Superior Court.

27

28

**STATUS CONFERENCE STATEMENT**

1    The Fridmans filed this petition for writ of mandate on November 12, 2010. The

2  Fridmans petitioned the Court for a writ of mandate pursuant to Code of Civil Procedure sections

3  1085 and 1086, requesting that the Association be ordered to carry out its ministerial duty under

4  Civil Code section 1366 and levy a special assessment to satisfy the order of judgment against

5  the Association.

6    On January 12, 2011, after taking the matter under submission so that the Court could

7  review the case of *O'Toole v. Los Angeles Kingsbury Court Owners Association*, the Court ruled:

8       "As stated on the record, on November 12, 2009 the court
        previously denied an application by the Fridmans in Action No.
9       07CC09589 (the same case with an earlier case number) for the
        appointment of a receiver to accomplish the same purpose as that
10      sought in the instant petition for writ of mandate. **At that time,
        the court remarked that regardless of the fact that it had the
11      power to make such an order, *it was not obligated to do so*; it
        added that it had been given insufficient evidence that failure
12      to make the requested order might result in an unfairness or a
        miscarriage of justice.**
13      The *O'Toole* case does not alter the court's earlier evaluation that
        the Fridmans are more or less situated like many countless
14      judgment creditors who have not fully collected on their judgments
        . . ."

15    The Court sustained the Association's Demurrer without leave to amend. The Appellants

16  thereafter filed their Notice of Appeal on January 19, 2011.

17    On September 6, 2011, the Appellate Court reversed the trial court. The Court of Appeal

18  found, based upon *De Novo* review:

19      ". . .Civil Code section 1366 authorizes a homeowners association
        to levy a special assessment to satisfy a legal judgment against it.
20      **Under established law, the petition filed by the Fridmans
        alleged the necessary requirements for issuance of a writ of
21      mandate ordering Beach Crest to levy a special assessment to
        satisfy the Fridmans' judgment.** The trial court erred by
22      determining, as a matter of law, that the Fridmans had failed to
        make the required allegations."[5]
23

24    The Court of Appeal ordered the trial court to reverse its prior order and ordered

25  "Appellants to recover their costs on appeal."

26

27

28    [5] Opinion, Superior Court 30-2010-00424435, Appellate Case G044704, September 6, 2011, attached
    hereto as **Exhibit C**.

4

**E.**     **CURRENT STATUS**

1      The Court requested to issue the writ of mandate to order the Association to pay the

2  judgment rendered in 2009 has placed a stay on this action for over three years now.  The Court

3  first stayed the case for over a year by applying the automatic bankruptcy stay provisions of 11

4  U.S.C. 362(a)(1) at the urging of Beach Crest Villas.  The Petitioners were forced to obtain

5  bankruptcy counsel who thereafter obtained an order from the bankruptcy court declaring that:

> *"The State Court Litigation is not stayed by 11 U.S.C. section 362*
> *as to the Judgment itself as it is not property of the Debtor's*
> *bankruptcy estate as the assigment of the Judgment to Darling &*
> *Risbrough was executed prior to the bankruptcy filing and*
> *appears valid.  Relief from the automatic stay is granted to allow*
> *the State Court Litigation to proceed as it relates to the*
> *condominium unit currently owned by the Debtors."*

On February 14, 2013, this Court held a review hearing.  Based upon the Bankruptcy

Court's order, this Court scheduled the hearing for the writ of mandate for March 1, 2013.  The

Court asked all parties at that time if the mater had been fully briefed.  All responded that it had

been.  The petition for writ of mandate hearing was green-lighted to go forward on March 1,

2013.

Without invitation, on February 22, 2013, Beach Crest Villas Homeowners' Association

filed additional briefing, again requesting a stay.  Petitioners objected.

On April 16, 2013, the trial court ordered the case to be stayed a second time, based upon

the Court's powers pursuant to Code of Civil Procedure section 128.  The Court's rationale was

articulated at oral argument:

> "Until the judgment in Avetoom is final, this court cannot
> determine what, if any, offset is warranted against the judgment
> rendered in favor of the Fridman Plaintiffs has been assigned to
> their counsel Darling & Risbrough, LLP.  The court notes the
> petitioners are seeking an assessment of $38,075.64 or so per
> condominium unit against Beach Crest Villas absent any offset.  It
> would be an enormous wast of resources to adjudicate the writ now
> when any assessment would be affected by the setoff **should one**
> **be granted.**"

In the Court's final order of April 16, 2013, the Court concluded that factually, the

Fridmans' case was unlike the case of *Brienza v. Tepper* because "The Brienza court was

5

1    addressing an attorney's charging lien arising from a contingency fee agreement. *Id.* at 1841 to

2    1842. There is no contingency fee agreement in the Fridman case." (Court's minute order,

3    page 4, attached hereto as **Exhibit D**.)

4        Simply, the Court got the facts wrong. The Fridmans' attorneys, Darling & Risbrough,

5    LLP and Margaret Elder, had a contingency fee agreement with the Fridmans from the outset of

6    their case in 2007.

7        The Court went on to say that, "Both the Brienza case and the Cetenko cases dealt with

8    attorney lien priority to a recovery and not to the issue of offset." Petitioners agree. Petitioners'

9    argument has always been that the attorneys, who obtained a lien on the *Fridman v. Beach Crest*

10   *Villas* case in 2007, have priority over any assignment by Avetoom to Beach Crest Villas which

11   only arose in November 2011.

12       An additional status conference took place in December 2013. The Court continued to

13   stay all proceedings.

14   **F.    REQUESTED RELIEF AT THIS STATUS CONFERENCE**

15       The Court should lift the stay. The Court's rationale for the stay is that the writ of

16   mandate proceeding "would be an enormous waste of resources . . . when any assessment would

17   be affected by the setoff **should one be granted**."

18       But one may not be granted. Because this case was a **contingency fee based case**, the

19   issue is not one of setoff, but of priority. Avetoom only obtained his judgment in November

20   2011. He could not have assigned any right to Beach Crest Villas until **after** that date. Darling

21   & Risbrough, LLP and Margaret Elder had a contingency fee agreement in place in 2007 and the

22   Fridmans obtained their judgment - with an award of attorneys' fees - in 2009, over two years

23   before Avetoom had any rights to even assign Beach Crest Villas any of his award. Thus,

24   Darling & Risbrough, LLP and Margaret Elder have priority over Beach Crest Villas

25   Homeowners' Association's claim of offset against the Fridman v. Avetoom judgment.

26       The threshold issue is:

27            WHO HAS PRIORITY?

28   / / /

6

1    By going forward with the writ of mandate proceeding, this Court can take evidence and

2    make its determination. However, by simply doing nothing but staying the case for even more

3    years, the Court is merely abdicating its role and denying justice by authorizing delay.

4

5                                                    **DARLING & RISBROUGH, LLP**

6

7    Dated: May 30, 2014            By:

8                                                    Robert C. Risbrough
                                                     Attorneys for Petitioners
9                                                    MOISEY and ROSA FRIDMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                    7

                                    **STATUS CONFERENCE STATEMENT**

# SUPPORTING DECLARATION OF KARL AVETOOM

I, Karl Avetoom, hereby declare as follows:

1.     I am a creditor in the aforementioned Bankruptcy Case (8:12-bk-11721-ES)[In re Moisey Fridman and Rosa Fridman].    I am also an interested party in the California State Court action (Case # 30-2010-00424435).    I have personal knowledge of the following and if called upon to testify under oath, I could and would do so.

2.     I make the Declaration in support of my Motion for an Order Clarifying this Court's January 17, 2014 Relief from Stay Order [Docket # 121]

3.     On or around November 21, 2012 Creditor Darling & Risbrough, through their undersigned counsel filed a Relief from Stay Motion [Docket # 83] alleging that the Debtors' Writ and underlying Judgment is not part of the Debtors estate as it had been "assigned" and owned outright by Darling & Risbrough.    In the alternative, Darling & Risbrough sought an order compelling abandonment of the Debtors' judgment under 11 U.S.C. 554 under a "priority lien" against the Debtors' judgment.

4.     On or around January 3, 2013 the Court heard oral argument and issued a tentative ruling stating that the "assignment" appeared valid but allowed the Trustee to pursue an adversary action to reclaim the assigned judgment.

5.     On or around January 17, 2013 the Court signed its final ruling stating that the "assignment" appeared valid to Risbrough yet reserved the Chapter 7 Trustee's right to pursue an avoidance action against Risbrough.    The Order also specifically DENIED Risbrough's relief request under the theory that Risbrough had a "priority lien" over the Debtors judgment, which would be an asset of the estate.    A true and correct copy of this Court's Motion is attached as Exhibit A.

6.     Darling & Risbrough returned to state court (Hon. Judge Thierry Colaw) wherein Risbrough began to argue the "lien" claims over the Debtors judgment

1    which this Bankruptcy Court DENIED relief under in its January 17, 2013 Order.

7.    On or around April 16, 2013 Judge Colaw issued his ruling as to the "offset"
of judgments, and "lien priority". A true and correct copy is attached to this
Motion as Exhibit B.

8.    Throughout the State Court Writ proceedings, Darling & Risbrough has
repeatedly pursued the "lien priority" claim over the Debtors' judgment, and in fact
have filed numerous pleadings alleging the Debtors are the Moving party in the
State Court litigation. Attached to the Motion as Exhibit C is a true and correct
copy of Darling & Risbrough's Status Conference Brief from May 30, 2014.

9.    It is the consensus of myself and numerous other creditors that Darling &
Risbrough are now changing their story, from "we own the judgment" by
"assignment", to we "have a priority lien" over the judgment. I had already
prepared a fraudulent conveyance action against Risbrough, however prior to filing
the action, the Debtors filed for bankruptcy protection. Should the Trustee not file
his own claim, I will be filing my own action in State Court at the earliest
convenience.

10.    I am employed as a paralegal for four (4) law firms and in conducting
substantial research, it appears that the Ninth Circuit views relief from stay Orders
as being strictly construed.

11.    I respectfully seek clarification of this Court's January 17, 2013 Order to
ascertain *if* pursuit of material and claims relating to "priority liens" which was
DENIED in the Court's Relief Order, potentially violates the Court's Relief Order,
and/or violate the Stay under 11 U.S.C. 362.

12.    The State Trial Court has ordered briefing and a hearing on the matter of liens
to be held in September 2014. I do not wish to respond to an avenue of argument
that seemingly expands the scope of this Court's January 17, 2013 Relief Order,
and/or violates the Stay.

13.    After attending the January 3, 2013 hearing and receiving the Court's

MOTION FOR CLARIFICATION OF RELIEF FROM STAY ORDER {Docket 121 - JANUARY 17, 2014]

January 17, 2013 ruling stating the judgment was "<u>assigned</u>" I believe that Darling and Risbrough have now expanded the scope to step away from the assignment, and travel the "lien" over the Debtors' judgment road formerly closed by this Court's Relief from Stay Order.  If this Court made findings that the stay is lifted pursuant to a claim of an "<u>assignment</u>" (Court's Ruling), then I believe Risbrough must stick to the narrow terms of relief and be constrained to the "assignment" claim and now have to be forced to respond to argument seemingly in expansion and violation of this Court's Order.

14.    Darling & Risbrough obtained relief ONLY under the "assignment" theory. They were DENIED relief under the "lien priority" over the Debtors' judgment claim.  Accordingly, allowing Darling & Risbrough to expand the scope of relief, would, in my opinion, cause problems with unauthorized expansion of this Court's January 17, 2013 Relief of Stay Order, and invoke the '362' Stay itself.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct.

Dated:      July 8, 2014 in Newport Beach, Ca.

By:    _____
       Karl Avetoom, Creditor

6

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

Law Offices of Jeffrey Laurice   895 Dove Street, 3rd Floor Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CREDITOR KARL AVETOOM'S MOTION FOR AN ORDER CLARIFIYING THIS COURT'S JANUARY 17, 2013 ORDER [Docket 121] GRANTING LIMITED RELIEF FROM STAY AND FOR AN ORDER DETERMINING IF CONTINUATION OF CLAIMS FORMERLY DENIED BY THE RELIEF ORDER VIOLATE THE ORDER ITSELF AND/OR THE '362' STAY; EXHIBIT A & B, SUPPORTING DECLARATION OF KARL AVEOOM.**   Request for Judicial Notice [FRE 201] in support of Motion for Clarification and Order.

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On 7/7/2014, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:
·Office of the United States Trustee, Santa Ana Division, ustpregion16.sa.ecf@usdoj.gov Karl Anderson, Chapter 7 Trustee - edansie@hotmail.com Matthew E. Faler, Esq. - mfaler@faler-law.com Philip J. Giles, Esq. - ecfcacb@piteduncan.com Gilbert B. Weisman, II, Esq. - notices@becket-lee.com Beth Gaschen, Esq. - bgaschen@wgllp.com David W. Brody, Esq. - dbrody@brody-law.com, Laily Boutaleb-laily@mjonesandassociates.com, Michael G. David-mike@mikedavidlaw.com, Michael Jones-mike@mjthelawyer.com, Todd A. Frealy - taf@lnbyb.com, office@smythandsmyth.com, ali Matin - amatin@bmkattorneys.com, Steven J Katzman - SKatzman@bmkattorneys.com

☐  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On 4/30/2014, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

- Rosa Fridman       PO Box 10611 Costa Mesa, CA 92627,    Moisey Fridman  PO Box 10611 Costa Mesa, CA 92627
- Beach Crest Homeowner's Association, 1100 Rutland Road, Newport Beach, California 92660

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 4/30/2014, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.
- United States Bankruptcy Court, Central District of California, Honorable Erithe A. Smith, 411 West Fourth Street, Suite 5440, Santa Ana, California 92701

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 7/8/2014 | Dominik Gargano | _Donnie Gargano_ (signature) |
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                    **F 9013-3.1.PROOF.SERVICE**